## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ANANA NIGRITIA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18-cv-00308 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Anana Nigritia works for Defendant City of Chicago ("City") in its Department of Fleet and Facility Management ("2FM"). Nigritia claims that the City retaliated against him after he reported suffering discrimination and misconduct by one of his managers. He filed suit against the City alleging one claim of retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and one claim under the Illinois Whistleblower Act ("IWA"), 740 ILCS 174/1 *et seq.* The City has now moved for summary judgment on both claims. (Dkt. No. 68.) For the reasons explained below, the City's motion is granted.

## BACKGROUND

For purposes of the City's summary judgment motion, the Court views the evidence in the light most favorable to Nigritia and draws all reasonable inferences in his favor. *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). Except as otherwise noted, the following facts are undisputed.

Nigritia has been employed as a service writer at the City's 2FM Department since 1992. (Pl.'s Resp. to Def.'s Statement of Material Facts ("PRSOMF") ¶ 1, Dkt. No. 71.) He describes his national origin as Ghanaian, his race as African, and his religion as "Nigritian." (Compl. ¶ 3,

Dkt. No. 1.) As a service writer, Nigritia's job duties generally include tracking and documenting maintenance work on City vehicles and checking the mileage and physical condition of those vehicles. (PRSOMF ¶ 2.) He is required to place many documents and forms on a shared drive called the "S: drive." (*Id.* ¶ 8.)

Nigritia has worked the second shift at 2FM's 52nd Street Garage since December 31, 2012. (*Id.* ¶ 3.) From 1992 until December 2012, Ruth Figueroa was the supervisor for all service writers. (*Id.* ¶ 4.) She trained Nigritia on the S: drive and other computer issues. (*Id.* ¶¶ 8–9.) Curtis Anderson was Nigritia's direct supervisor from March 2016 to September 2018. (*Id.* ¶ 5.) Mike Zavala then became his supervisor in October 2018. (*Id.* ¶ 6.) Since October 2018, Zavala and a vehicle maintenance manager named Gary Clemens have had the authority to discipline Nigritia. (*Id.* ¶ 7.)

When Figueroa was Nigritia's supervisor, she observed him fall asleep on the job, talk excessively to coworkers, and take much longer to perform tasks than his coworkers. (*Id.* ¶ 11.) From 1999 onward, she and another supervisor disciplined Nigritia on many occasions for his performance. (*Id.* ¶¶ 12–21, 23–24, 26.) That discipline included at least ten suspensions between 1999 and 2015. (*Id.*) In 2015, he was placed on a performance improvement plan ("PIP") to improve his work performance. (*Id.* ¶ 25.) Nonetheless, his 2015–16 performance evaluation rated his performance as not meeting expectations. (*Id.* ¶ 28.) He was therefore placed on a second PIP. (*Id.* ¶ 29.) Pursuant to that PIP, Nigritia received additional training. (*Id.* ¶ 33.)

From 1992 to 2015, Figueroa was in charge of approving overtime for service writers. (*Id.* ¶ 42.) From March 2016 to September 2018, Anderson was in charge of approving any overtime for Nigritia. (*Id.*) No 2FM employee is guaranteed overtime. (*Id.* ¶ 43.) Overtime is more common in the winter, and third-shift employees and employees at O'Hare International Airport are the

most likely to get overtime. (*Id.* ¶¶ 46–47, 51.) Nonetheless, both Anderson and Figueroa made Nigritia overtime offers that he refused or to which he failed to respond. (*Id.* ¶ 45.) Between 2015 and 2017, he worked more overtime than at least three other service writers. (*Id.* ¶ 52.) Nigritia points to a particular service writer who received more overtime than him. (Def.'s Resp. to Pl.'s Statement of Additional Material Facts ("DRSOMF") ¶ 11, Dkt. No. 84.) But he does not deny that she worked the third shift, which gave her more opportunities for overtime. (*Id.*; PRSOMF ¶ 47).

In November 2016, Anderson—who was then Nigritia's supervisor—found out from Clemens that Nigritia had failed to place a particular document on the S: drive or to leave a hard copy. (PRSOMF ¶¶ 36–37.) Anderson then reviewed Nigritia's daily work and found that many documents Nigritia was required to submit were missing. (*Id.* ¶ 38.) On December 10, 2016, Anderson requested a discipline recommendation from the human resources department. (*Id.* ¶ 39.) Anderson received a predisciplinary notice for Nigritia on December 29, 2016, and he forwarded it to Nigritia the next day. (*Id.* ¶ 40.) Anderson and Nigritia had a predisciplinary meeting on January 4, 2017, after which Anderson issued a ten-day suspension. (*Id.* ¶ 41.)

From 2015 to 2018, Nigritia lodged several complaints of discrimination with different agencies. Nigritia first complained to the City's Equal Employment Opportunity ("EEO") office in September 2015 about discrimination in the distribution of overtime and harassment in the workplace. (*Id.* ¶ 53.) In April 2016, he filed a charge with the City of Chicago Commission on Human Relations ("CCHR") about discrimination based on race and religion. (*Id.* ¶ 56.) The charge was dismissed on December 30, 2017, and a notice of the dismissal was mailed on January 12, 2017. (*Id.*) In May 2016, he made another complaint to the EEO about harassment and the lack of overtime (*id.* ¶ 54), and he also filed a charge with the Equal Employment Opportunity

3

Commission ("EEOC") concerning race discrimination and retaliation (*id.* ¶ 55). The same month, Nigritia filed a report with the City's Office of the Inspector General ("OIG") accusing Clemens of taking extended breaks while on the clock and asking a City vendor to work on his wife's car. (*Id.* ¶¶ 57, 61; DRSOMF ¶ 31.) Anderson was aware of the May 2016 EEO complaint, but he was not aware of Nigritia's complaints to the OIG, CCHR, and EEOC. (PRSOMF ¶ 59.) Clemens did not learn of the OIG complaint until he received a copy of Nigritia's Complaint in this lawsuit. (*Id.* ¶ 60.)

Nigritia claims that he was retaliated against because of the various complaints he filed. The most significant instance of alleged retaliation was the ten-day suspension that Nigritia received from Clemens on January 27, 2017. But Nigritia has presented evidence of several other instances of what he terms retaliation. For example, Clemens denied him lunch breaks twice in 2016, though on one occasion Anderson overrode Clemens's decision. (*Id.* ¶ 62.) In addition, Nigritia's lunch was thrown out from the common fridge four times in 2016, Clemens once denied him a complaint form, and Clemens invaded his personal space on two occasions. (*Id.* ¶¶ 63, 66–67.) Nigritia was also denied overtime pay when he worked late, but he admits that he did not get prior approval to stay past his regular working hours. (*Id.* ¶ 65.)

On March 3, 2017, Nigritia filed his second charge with the EEOC alleging retaliation and a hostile work environment. (Mem. in Supp. of Mot. to Dismiss, Ex. A at 1, Dkt. No. 22-1.) The retaliatory act of which he complained was the ten-day suspension that Clemens gave him in January 2017, which Nigritia claims was actually retaliation for his May 2016 EEOC charge and his April 2016 CCHR complaint. (*Id.*) The EEOC took no action on the charge, and Nigritia received his right-to-sue letter on October 19, 2017. (*Id.* at 2.)

In January 2018, Nigritia filed a two-count Complaint against the City in this Court. (Dkt. No. 1.) Count I alleges retaliation under Title VII, and Count II asserts a state law claim for retaliation under the IWA based on Nigritia's OIG report about Clemens' alleged misconduct. For both counts, Nigritia seeks damages and attorneys' fees and costs. The City moved to dismiss the Complaint. (Dkt. No. 20.) The Court denied the motion but limited the Title VII retaliation claim to the ten-day suspension Nigritia received in November 2016 because that was the only form of retaliation listed in Nigritia's March 2018 EEOC charge. (Dkt. No. 53.) The City has now moved for summary judgment on both counts. (Dkt. No. 68.)

## DISCUSSION

Under Federal Rule of Civil Procedure 56, the Court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To do so, the movant must identify relevant segments from the pleadings, depositions, admissions, affidavits, or answers to interrogatories that demonstrate the lack of any genuine material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To defeat a summary judgment motion, an opposing party must respond by setting forth specific facts showing there is a genuine factual issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). As noted above, in determining whether there is a genuine factual issue for trial, the Court must view all evidence in the light most favorable to and draw all reasonable inferences in favor of the nonmovant. *Harney*, 526 F.3d at 1104. But the genuineness of a factual dispute suffices to defeat a motion for summary judgment only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Lawrence v. Kenosha County*, 391 F.3d 837, 842 (7th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248).

## I.     Title VII Retaliation

Title VII prohibits employers from retaliating against employees for engaging in activity

protected by the statute. 42 U.S.C. § 2000e-3(a). To survive summary judgment on his Title VII

retaliation claim, Nigritia must demonstrate a genuine issue of material fact on one of the

following elements: "(1) he engaged in an activity protected by the statute; (2) he suffered an

adverse employment action; and (3) there is a causal link between the protected activity and the

adverse action." *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). If a plaintiff such as Nigritia

can show protected activity and an adverse employment action, the fundamental question is

whether a retaliatory motive caused the adverse action. *See id.*

The City does not dispute that Nigritia engaged in protected activity when he filed his May

2016 EEOC charge or when he filed discrimination and retaliation complaints with the City's

EEO and the CCHR.[1] As for adverse employment actions, the Court will only consider the ten-

day suspension that Nigritia received in January 2017 because that was the only adverse action

described in his March 2017 EEOC charge.[2] (*See* Order with Statement at 3–4, Dkt. No. 53.) But

the City does not dispute that a suspension is an adverse employment action. Therefore, the

question for this claim is whether there was a causal link between Nigritia's complaints of

discrimination and his subsequent suspension. The record does not contain any statements by

---

[1] Nigritia did not, however, engage in protected activity when he complained to the City's OIG about Clemens taking breaks on the clock or asking for favors from a City vendor. For purposes of a Title VII claim, protected activity only includes opposing a practice made unlawful by Title VII, filing a charge pursuant to Title VII, or participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a). Clemens's activities documented in the OIG complaint might have been illegal, but they are not prohibited by Title VII.

[2] Nigritia's response in opposition to the City's motion for summary judgment spends pages discussing other alleged retaliation against him. The Court disregards his arguments about other forms of retaliation for purposes of the Title VII claim because the Court already decided that the Title VII claim must be limited to incidents described in Nigritia's March 2017 EEOC charge. In addition, Nigritia makes several arguments in his brief that appear to concern a hostile work environment claim. But the Court disregards all such arguments because Nigritia has failed to plead a hostile work environment claim.

Anderson, the supervisor who suspended Nigritia, to the effect that he suspended Nigritia because of his previous complaints of discrimination. Nonetheless, Nigritia could create a genuine issue of material fact about Anderson's motives through circumstantial evidence, such as "suspicious timing, a pretextual explanation for the [adverse employment action], and evidence that similarly situated employees were treated differently." *Gracia v. SimaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016).

The first question is what Anderson could have been retaliating against Nigritia for. Anderson could not have suspended Nigritia for the charges he filed with the EEOC or the CCHR, as Nigritia has admitted that Anderson was not aware of the charges he filed with those two agencies until Nigritia filed this suit in federal court in January 2018. (PRSOMF ¶ 59.) The only complaints of discrimination of which Anderson was aware were Nigritia's complaints to the City's EEO in September 2015 and May 2016.[3] (*Id.*) A decisionmaker can only act against an employee with a retaliatory motive if he is aware that the employee has engaged in activity that is protected by Title VII. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004). "[A]bsent such knowledge, there can be no causal link between" protected activity and an adverse employment action. *Id.* Therefore, Nigritia can only survive summary judgment if he demonstrates a genuine issue of material fact as to whether Anderson suspended Nigritia in retaliation for his two EEO complaints—the only complaints about which Anderson knew. The Court concludes that Nigritia has not created a genuine issue of material fact on that question.

---

[3] It is not clear whether Nigritia may pursue a claim that Anderson retaliated against him because of the EEO complaints given that Nigritia's EEOC charge only mentioned retaliation based on his previous EEOC and CCHR charges. *See Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (holding that a plaintiff in a Title VII suit may only pursue claims that could reasonably be expected to grow from his EEOC charge). But since the parties' briefing did not address whether a claim based on the EEO complaints could be expected to grow out of Anderson's March 2017 EEOC charge, the Court will assume without deciding that Nigritia can pursue such a claim.

The City has put forward a legitimate nondiscriminatory reason for terminating Nigritia: he failed to perform his job duties in November 2016. The City has pointed to extensive record evidence that Nigritia failed to write work orders for City vehicles, failed to communicate with other employees about City vehicles, and failed to place required documents on the S: drive. (PRSOMF ¶¶ 36–38.) Those failures came on the heels of two PIPs and ten other suspensions for failure to perform his job duties. Nigritia has not raised any doubts about whether the stated reason for terminating him was actually pretext. He has pointed to no evidence that there were similarly situated employees who failed to perform their job duties and were not suspended— much less that there were other employees who had a disciplinary history as long as Nigritia's. While he does point to another service writer as a potential comparator, he has provided no record evidence that she had either a similar disciplinary history or similar performance issues to him. As a result, she is not a similarly situated employee. *See Abrego v. Wilkie*, 907 F.3d 1004, 1013 (7th Cir. 2018) (explaining that employees must be similar enough to eliminate performance histories and other confounding variables in order to be similarly situated).

At most, Nigritia can point to the timing of his suspension as suggesting a causal link to his protected activity. Close temporal proximity plus other evidence of retaliatory motive can suffice to establish a genuine issue of material fact. *See Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004). But temporal proximity is rarely enough by itself to allow a plaintiff survive summary judgment unless the timing is strongly suggestive of retaliation. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). And the longer the gap between the protected activity and the retaliation, the weaker the evidence of timing. *See Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 698 (7th Cir. 2017) (holding that a six-month gap "substantially weaken[ed]" the plaintiff's claim). Here, there was at least a six-month gap

between the protected activity and Nigritia's suspension. The first EEO complaint was submitted in September 2015 and the second in May 2016. Anderson began investigating poor performance by Nigritia in November 2016, initiated the disciplinary process in December 2016, and imposed discipline in January 2017. This timing is not very suggestive of retaliation, and Nigritia has not introduced other evidence connecting the timing of the suspension with his two complaints to the EEO. Based on this evidence, no reasonable juror could conclude that the ten-day suspension constituted retaliation for the complaints. Nigritia therefore has failed to create a genuine issue of material fact on the question of causation and judgment as a matter of law in favor of the City is warranted.

## II. Illinois Whistleblower Act

Nigritia's only other claim is an Illinois statutory claim. Because the parties are both citizens of Illinois, this claim does not fall under the Court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a). The Court may therefore only rule on this claim on the merits through supplemental jurisdiction. *See id.* § 1367(a). Now that the Court has granted summary judgment to the City on the only claim over which the Court has original jurisdiction, the Court may decline to exercise supplemental jurisdiction over the pendent state law claim. *See id.* § 1367(c)(3). But the Seventh Circuit has ruled that district courts may retain jurisdiction if the statute of limitations has run, if substantial judicial resources have been committed to the case, or if it is absolutely clear how the state law claim should be decided. *See Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008). The Court has committed substantial resources to this case, including a written ruling on a motion to dismiss. And, as described below, it is clear how the state law claim should be resolved. The federal law and state law claims in this case are, moreover, closely intertwined and the Court can

resolve the state law claim without addressing novel questions of state law. Therefore, the Court elects to retain jurisdiction over the IWA claim.

Nigritia claims that the City violated the IWA by retaliating against him after he reported misconduct by Clemens to the OIG. The IWA forbids employers from retaliating against an employee who discloses information in any proceeding or to any government or law enforcement entity if the employee has reasonable cause to believe that the information discloses a violation of state or federal law. *See* 740 ILCS 174/15. The statute creates a civil cause of action against an employer who violates the statute. *See* 740 ILCS 174/30. To survive summary judgment on his claim under the IWA, Nigritia must "provide some evidence that the employer had a retaliatory motive." *Williams v. Office of Chief Judge of Cook Cty.*, 839 F.3d 617, 627 (7th Cir. 2016) (citing *Michael v. Precision Alliance Grp., LLC*, 952 N.E.2d 682, 688 (Ill. 2011)); *see also Sweeney v. City of Decatur*, 79 N.E.3d 184, 188 (Ill. App. Ct. 2017). The critical inquiry is whether the employer or its agent acted with the intent to retaliate for protected activity. *See Sardiga v. N. Tr. Co.*, 948 N.E.2d 652, 657 (Ill. App. Ct. 2011) (interpreting 740 ILCS 174/20); *see also see also Robinson v. Alter Barge Line, Inc.*, 513 F.3d 668, 670 (7th Cir. 2008) (same). Therefore, Nigritia cannot survive summary judgment without putting forward evidence that the supervisors who allegedly retaliated against him actually knew about his report to the OIG. *See Spalding v. City of Chicago*, 186 F. Supp. 3d 884, 917–18 (N.D. Ill. 2016).

Anderson and Clemens were the two supervisors who took all of the allegedly retaliatory actions, such as suspending Nigritia, denying him access to complaint forms, getting into physical confrontations with him, denying him overtime, and refusing to discipline other employees who treated Nigritia poorly. But Nigritia has admitted that neither Anderson nor Clemens knew about his report to the OIG until he filed his Complaint in this Court—long after all the allegedly

retaliatory acts. (PRSOMF ¶¶ 59–60.) Therefore, Anderson and Clemens could not have acted in retaliation for the report to the OIG and Nigritia's claim fails as a matter of law.

The City raises two other arguments in favor of summary judgment. The first is that only material acts are retaliatory under the IWA and the only material retaliatory act was Nigritia's ten-day suspension in January 2017. The second is that the statute of limitations precludes Nigritia from suing over any retaliatory acts that occurred more than one year before he filed his Complaint in this Court, which would exclude almost all the alleged retaliation except the ten-day suspension. State law is unsettled on the legal questions that the City raises around materiality and the statute of limitations. *See Williams*, 839 F.3d at 627 (noting that it is not clear whether the one-year statute of limitations in the Illinois Local Governmental and Governmental Employees Tort Immunity Act applies to the IWA); *Elue v. City of Chicago*, No. 16 CV 09564, 2017 WL 2653082, at *5–6 (N.D. Ill. June 20, 2017) (describing the unsettled state of the law around whether only material retaliation is actionable under 740 ILCS 174/15). The Court therefore declines to address either of these two arguments. Regardless of the outcome of the materiality and limitations issues, Nigritia's claim cannot survive summary judgment because there is no record evidence that a supervisor acted against him with a retaliatory motive. Thus, the Court need not wade into two unsettled questions of state law that will not affect the outcome of the City's motion.

**CONCLUSION**

For the reasons given, the Court grants Defendant City of Chicago's motion for summary judgment (Dkt. No. 68). The Clerk will enter Judgment in favor of the City and against Nigritia as to both claims.

ENTERED:

Dated:  May 19, 2020

Andrea R. Wood
United States District Judge